## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

KELLY B. MATHIS,
an individual, and
K.B. MATHIS, PA, a Florida
professional association

       Plaintiff,

vs.                                                                                  Case No.:

DONALD ESLINGER, an individual;
JAMES "SAMMY"GIBSON, an
individual; APRIL KIRSHEMAN, an
individual; PAMELA J. BONDI, an
individual; and NICHOLAS COX,
an individual.

       Defendants.

_____/

### COMPLAINT AND JURY DEMAND

Plaintiffs KELLY B. MATHIS, an individual ("Mathis") and K. B. MATHIS, PA, a

Florida professional association ("Mathis Law Firm") hereby sue Defendants, DONALD

ESLINGER, an individual ("Eslinger"); JAMES "SAMMY"GIBSON, an individual ("Gibson");

APRIL KIRSHEMAN, an individual ("Kirsheman"); PAMELA J. BONDI, an individual

("Bondi"); and NICHOLAS COX, an individual ("Cox"), and state as follows:

### Allegations Common to All Counts

1.      This is an action for monetary damages in which jurisdiction is based on 28

U.S.C. §1331.

2.      Plaintiff Mathis is a resident of Jacksonville, Duval County, Florida.

3.      Plaintiff Mathis Law Firm (f/k/a Mathis & Murphy, PA) is a Florida professional association doing business in Jacksonville, Duval County, Florida.

4.      Defendant Eslinger is a Florida resident and was, at all times material to this claim, the Sheriff of Seminole County, Florida.

5.       Defendant Gibson is a resident of the State of Florida and was, at all material times, a Captain and Officer with the Seminole County Sheriff's Department.

6.      Defendant Kirsheman is a Florida resident and was, at all material times, General Counsel to Sheriff Eslinger at the Seminole County Sheriff's Department.

7.      Defendant Bondi was, at all material times, a resident of Florida and the Attorney General of the State of Florida.

8.      Defendant Cox is a Florida resident and was, at all material times, the Statewide Prosecutor of the Office of Attorney General, State of Florida.

9.      Venue is proper in the Middle District of Florida since plaintiff Mathis resides, and worked at all material times, in the Middle District of Florida and the actions giving rise to this litigation occurred in the Middle District of Florida.

10.      At all material times hereto, except as specifically set forth below, Mathis was, and is, a licensed member of the State Bar of Florida whose bar license has been active since 1988.

11.      From 2003 to 2013, Mathis was the senior and managing partner of the law firm Mathis and Murphy, PA[1] ("Mathis Law Firm").  Mathis started the Mathis Law Firm in 2003 and by 2011 the Mathis Law Firm had grown to nine (9) attorneys.  The Mathis Law Firm provided

---

[1] In 2013, after Mathis' arrest, the name was changed to K.B. Mathis, PA.

legal representation to numerous clients in the areas of business, business litigation, personal injury, and general civil matters.

12.     In March 2007, the Mathis Law Firm was hired as legal counsel by Allied Veterans of the World and Affiliates, Inc., a nonprofit corporation ("Allied Veterans"). Allied Veterans was a qualified nonprofit veterans organization pursuant to Internal Revenue Code section 501 (c) (19).

13.     In March 2007, Allied Veterans sought legal advice regarding the conduct of a sweepstakes or drawing by chance in the State of Florida. After several months of research, Mathis and the Mathis Law Firm concluded that Allied Veterans could legally conduct a sweepstakes or drawing by chance in the State of Florida under certain specific parameters.  The client, Allied Veterans, was advised accordingly.

14.      Specifically, Allied Veterans sought to open internet cafes whereby desktop personal computers would be made available to customers.  Customers would purchase internet time to be used on the computers provided, at a competitive market rate. Additional copying and printing services were also available.  For marketing purposes or as an incentive the customers also would receive sweepstakes entries that could be revealed on the desktop computers. However, rather than simply providing text or a numerical result, the computer displayed the results of the sweepstakes entries by graphic animation that simulated the spinning of slot machine reels. Other than this visual animation the form and substance of the operation was a completely lawful sweepstakes under the laws of the State of Florida then in existence.

15.     Unbeknownst to Mathis and the Mathis Law Firm at the time, the State of Florida Department of Agriculture, Division of Consumer Services (the "Department") had likewise researched and investigated the internet café model proposed by Allied Veterans for an unrelated

third party that also wanted to operate internet cafes. The Department was tasked with the responsibility of regulating and registering sweepstakes in the State of Florida. Like Mathis, the Department had concluded that the proposed internet café model consisted of a lawful sweepstakes under Florida law. In fact, a law review article had been published by attorneys with the Department setting forth these conclusions.[2]

16.     Thereafter, Allied Veterans begin opening internet cafes throughout the State of Florida. Each location was designated as a separate affiliate of Allied Veterans and operated as a subsidiary nonprofit to Allied Veterans.

17.     During the time period from March 2007 through March 12, 2013, Mathis and the Mathis Law Firm continued to serve as legal counsel for Allied Veterans, its affiliates, as well as various management companies and individuals associated with Allied Veterans. Mathis and the Mathis Law Firm provided legal counsel and representation to Allied Veterans and its affiliated entities and individuals with regard to business issues, litigation, government relations, sweepstakes and gambling issues.

18.     At no time was Mathis or Mathis Law Firm an officer, director, owner, investor, or part of the business operations of Allied Veterans or any of its affiliated entities. Instead, Mathis and the Mathis Law Firm provided only legal representation.

19.     At no time did Mathis or Mathis Law Firm receive any profit, percentage, or bonus from Allied Veterans or its affiliated entities. Instead, the only funds received were for the payment of legal invoices. Charges for legal fees were at reasonable and customary hourly rates. Monthly invoices itemized all tasks, the time spent, and the charge therefor.

---

[2] Florida Game Promotions Statue:  A Novel Application of an Exception to Florida's Prohibition on Gambling, 11 Gaming Law Review, 2 (2007) by Wilkinson and Miller.

20.     During the course of legal representation, the internet café model utilized by Allied Veterans came under close legal scrutiny by law enforcement, prosecutors, municipal and state government officials because of the visual display that mimicked spinning wheels like those found on slot machines. Because the images on the screen looked like a slot machine, some scrutinizing the operation were inclined to conclude that the computers *were* slot machines. The result of virtually every legal analysis, however, was that the internet café model complied with Florida Law or at least that the argument of its legality was so strong that it was rarely challenged. Indeed, many municipalities, including the City of Jacksonville, passed local ordinances providing for permitting and regulation of the internet cafes. Moreover, testing by an independent laboratory confirmed that the computer software differed substantially from slot machine software but that the software operated as a sweepstakes.

21.     Between March 2007 and March 12, 2013 the number of internet cafes in the State of Florida increased to an estimated 1,500 locations statewide. Of these, Allied Veterans had approximately fifty (50) locations. This rapid proliferation of internet cafes received significant attention and was the subject of debate as to whether they should be regulated and taxed or banned.

22.     In May 2009, Allied Veterans opened an internet café in Seminole County, Florida. A detailed opinion letter was sent to Defendant Eslinger, as Sheriff of Seminole County, Florida, explaining the internet café and providing the legal bases upon which it operated. Mathis made a substantial effort to meet personally with the Sheriff,[3] or someone from the Seminole County Sheriff's Department, to explain the operation of the internet café and the legal authority

---

[3] Allied Veterans even hired local counsel to assist with the meeting.

for its operation.  However, all requests for a meeting were refused.  This internet café location continued to operate until March 2013.

23.     In early 2009, Allied Veterans was also looking to open another location in Seminole County, this one within the city limits of Casselberry, Florida. In March 2009 Mathis met with Chief James Ruf, the Police Chief of Casselberry, Florida and explained his client's internet café model and the legal basis for its operation. Police Chief Ruf was likewise provided with a detailed written explanation and legal opinion and seemed satisfied.

24.     In January 2011, Defendants Eslinger and Kirsheman personally spearheaded an effort to pass legislation in Seminole County, Florida to ban internet cafes from operating within the County, including the two (2) internet cafes owned by Allied Veterans. At the urging of Defendant Eslinger, the ordinance was passed by the Board of County Commissioners.   In response to the newly passed Seminole County ordinance Mathis and the Mathis Law Firm filed a lawsuit in federal court on behalf of its clients challenging the legitimacy of the ordinance and seeking temporary injunctive relief to prevent enforcement. The U.S District Court granted the temporary restraining order[4] and Seminole County officials elected not to enforce the ordinance during the pendency of the litigation.

25.     At or about the same time, Defendants Eslinger and Kirsheman sought to change state law in an effort to prohibit internet cafes from operating anywhere within the State. Both worked closely with their local state legislator who ultimately filed proposed legislation in the Florida House of Representatives to ban internet cafes statewide. Both Eslinger and Kirsheman personally appeared in Tallahassee to lobby for the proposed legislation and testify against internet cafes. Through the efforts of lobbyists retained by Allied Veterans and others, and with

---

[4] After hearing, the court did not, however, extend the temporary injunction.

the assistance of Mathis, the proposed legislation banning internet cafes was defeated. During the following year's legislative session the Seminole County Representative, again at the behest of Eslinger and Kirsheman, filed another proposed bill banning internet cafes. Again, lobbyists, with the assistance of Mathis, defeated the bill.

26.     It became abundantly clear to Eslinger and Kirsheman that Allied Veterans, and its attorney Mathis in particular, were responsible for the failed attempts of Eslinger and Kirsheman to shut down the internet cafes.

27.     Eslinger and Kirsheman directed Gibson to investigate Allied Veterans and Mathis by name. Despite the fact that there were numerous other internet cafes in Seminole County (approximately six (6) others) and an estimated 1,400 statewide that had no affiliation with Allied Veterans, the directions were clear: only investigate Allied Veterans and Mathis.

28.     Although the entirety of the criminal investigation was predicated on a claim of alleged illegal gambling, the actual investigation relating to the issue of gambling was purposely perfunctory. The Seminole County Sheriff's Department hired a discredited slot machine examiner named Robert Sertell[5] to spend about ten (10) to fifteen (15) minutes at each Allied Veterans location to render an opinion that Allied Veterans was gambling and that the computers were really slot machines. When the "expert" witness' credentials were later challenged, Sertell was withdrawn by the State without protest or argument. The only other investigation of gambling consisted of Defendant Gibson reading inapplicable case law from other states. The investigation, led by Gibson, focused almost entirely on tracking down all money and assets that

---

[5] Sertell had been deposed by Mathis numerous times in other cases and had testified as a witness on behalf of the State in a Marion County trial that Mathis had tried. The same theory of gambling espoused by Sertell in this investigation was soundly rejected by the jury in the Marion County trial.

could be tied to Allied Veterans.  By identifying all persons and entities affiliated with Allied Veterans through online corporate record searches, the Defendants could seize more assets.

29.     Based on elicited questioning at a meeting of the Board of County Commissioners of Seminole County, Florida, Defendants Eslinger and Kirsheman were aware that the first Allied Veterans location in Seminole County was a lucrative establishment. Defendant Gibson became aware of this fact later, during early search stages of investigation, by obtaining bank records. The Defendants were well aware that asset seizures under the Florida Contraband Forfeiture Act (§932.701, et seq.) could bring millions of dollars into the Seminole County Sheriff's Department and Attorney General's Office, as well as fuel Defendant Eslinger's political career.

30.     In order to facilitate the ill-founded criminal prosecution and seizure of assets, and to conceal both their motivation and lack of justification for initiation of criminal proceedings, Defendant Kirsheman sought, and obtained, appointment as a specially appointed prosecutor from Defendants Cox and Bondi. This course of action and appointment was conducted with the knowledge and acquiescence, if not the direction, of Defendant Eslinger.

31.     Defendants Kirsheman and Gibson met with Defendants Cox and Bondi in connection with the Allied Veterans investigation and explained it to them.  Defendants Cox and Bondi quickly realized the tremendous financial gain, fame, career and political enhancement that could be obtained by claiming credit for exposing a multi-million dollar "gambling case." The Defendants agreed to, and later actually did, divide the money obtained from the case between the Seminole County Sheriff's Department and the Office of the Attorney General. Despite the obvious conflict of interest that existed for Defendant Kirsheman, by her obligation to represent the interests of Sheriff Eslinger on the one hand and pursue justice as a prosecutor

on the other hand, Defendants Bondi, Cox, Eslinger and Kirsheman agreed that Kirsheman would be appointed as a prosecutor solely for this case. This way they would all share in the spotlight. Ultimately, Kirsheman initially led both the prosecution of the criminal case and the civil forfeiture case to ensure that there could be no resolution of any criminal charges without an agreement to forfeit substantial assets to the Sheriff and the Florida Attorney General's Office.

32.     Pursuant to their agreement, the Defendants moved forward with the investigation, arrest, and prosecution of Mathis and Allied Veterans despite the lack of probable cause and the knowledge that their entire case hinged on the unsupported and unreliable conclusion of Sertell that Allied Veterans was engaged in gambling. Further, by falsely and deliberately claiming that Mathis was a corporate officer of all of the Allied Veterans' entities, the Defendants could secure Mathis' arrest as well.

33.     Based on the "expert" opinion of Sertell that Allied Veterans was gambling, and Defendant Gibson's reliance on caselaw from other states, the Defendants concluded that Mathis' legal opinion that the Allied Veterans internet cafes were legal was simply wrong. As such, the Defendants claimed that every time Mathis provided his legal opinion to anyone, or took other actions appropriate for an attorney in the representation of his clients, that he was promoting an illegal enterprise and thus personally criminally liable.

34.     In fact, the evidence and legal opinions that Allied Veterans' internet cafes were legal was overwhelming. However, this was intentionally omitted and deliberately ignored by the Defendants in their quest for the arrest of Mathis and Allied Veterans and seizure of millions of dollars. The Commissioner of Agriculture[6] had expressly stated that the internet cafes were legal. The Florida Senate had, twice, investigated internet cafes and had not concluded that they

---

[6] The Department of Agriculture, Division of Consumer Services, was the state agency that oversaw the operation of sweepstakes in Florida.

were illegal.   Numerous local governments, including the City of Jacksonville, had passed municipal ordinances regulating and permitting internet cafes.

35.     At least three (3) law review articles had been published, one by Mathis himself, that established the legality of internet cafes in Florida.   Further, not a single court in Florida had found the internet cafes illegal and two (2) prior trials on criminal charges, based on the same theory the Defendants propagated here, were unsuccessful.[7]   In fact, the only existing court opinion, from a Duval County Court, had found that the internet cafes were legal and that the City of Jacksonville had the authority to regulate and tax them.   All of this information, and much more, was intentionally omitted by the Defendants in the affidavit prepared for the arrest warrants, search warrants, and asset seizures in order to further their improper goals.

36.     By intentionally crafting such a disingenuous argument, the Defendants could assure that Mathis, who had successfully discredited Sertell in the past and successfully represented his clients in prior attempts of Eslinger and Kirsheman to close Allied Veterans, would not be able to represent any of his prior clients, now criminal defendants.   Therefore, the Allied Veterans criminal defendants would be deprived of the attorney best able to represent them.   These actions were intentionally designed, not to further justice, but to shut down Allied Veterans and silence Mathis, who had been an extreme annoyance to Defendants and the Seminole County Sheriff's Department.   Further, including Mathis in the investigation and arrest would give the Defendants access to documents that would otherwise be protected by the attorney/client privilege.

37.     Based on the "expert" opinions of Sertell, and the asset related investigation, Gibson crafted a lengthy affidavit designed specifically to seize all possible assets of Allied

---

[7] Mathis tried, and won, both.

Veterans and any person related to Allied Veterans for the benefit of the Defendants and the Seminole County Sheriff's Department.  This affidavit, however, later presented to the judge to obtain search warrants, arrest warrants, and seize assets was deliberately replete with mischaracterizations, false impressions, false statements, exaggerations, and omissions to create a distorted picture so that the arrests and seizures could be had. Moreover, the affidavit concealed and omitted critical and significant facts demonstrating the legality of Allied Veterans cafes in general and Mathis' proper role as legal counsel in particular.

38.     On March 12, 2013 Mathis was arrested at his law office in Jacksonville, Florida based on the false and misleading affidavit submitted by Gibson. The Mathis Law Firm bank accounts were frozen and its server, computers and approximately 150 banker's boxes of documents were seized. By this one action the Mathis Law Firm, with 8 lawyers, over a dozen staff, hundreds of clients, an impeccable reputation for professionalism, ethics, integrity and quality legal work was disintegrated. Mathis was charged with the following crimes:

> One count of Racketeering
>
> One count of Conspiracy to Commit Racketeering
>
> Fifty-one (51) counts of Possession of a Slot Machine[8]
>
> Fifty-one (51) counts of conducting an illegal Lottery
>
> Fifty-one (51) counts of Keeping a Gambling House
>
> Fifty-one (51) counts of Money Laundering

39.     Mathis was handcuffed and led out of the law firm that he had built in front of his partners, associate attorneys, staff, and his then wife.  Mathis was placed in a car and driven

---

[8] One count for each Allied Veterans Affiliate location, most of which Mathis had never visited.

straight to Seminole County, Florida, where he was processed and placed in maximum security solitary confinement for nearly 48 hours.

40.     As a result of the Seminole County Court's failure to conduct a bond hearing, which did not occur until Friday, March 15, 2013, Mathis spent four (4) days in incarceration. On March 15, 2013 bond was set at $200,000.00. The efforts of the Defendants to deny Mathis bond and then to subsequently avoid a bond hearing were intentional acts to allow the Defendants to obtain favorable media and legislative support since there would be no one to contradict the Defendants' false allegations.

41.     The Mathis criminal trial began on September 16, 2013 and concluded on October 11, 2013. Mathis was found not guilty on the conspiracy to commit racketeering but found guilty on all other charges. Mathis was not incarcerated but was held on the same bond as before. Sentencing was scheduled for February 12, 2014.

42.     In connection with the criminal prosecution of Mathis and Allied Veterans, the Seminole County Sheriff's Department seized millions of dollars in assets from Allied Veterans and persons that it claimed were associated with Allied Veterans. Moreover, to prevent outside scrutiny of the seizures, the Defendants seized assets outside Seminole County without legal authority.[9] The Seminole County Sheriff's Department also seized the operating account and trust account of the Mathis Law Firm in Jacksonville based on a Seminole County Seizure Warrant.

43.     During the pendency of the criminal prosecution Defendant Cox negotiated plea deals with all of the other 56 Allied Veterans criminal defendants. Mathis refused to negotiate a

---

[9] Seeking a seizure warrant outside of Seminole County would have allowed an independent assessment of the validity of the forfeitures.

plea. [10]   In all, or most, negotiations the Defendants conditioned resolution of the criminal charges on an agreement to forfeit significant assets that had been seized by the Sheriff's Department of Seminole County. Thus, the criminal charges were improperly and illegally used as leverage and a threat to coerce and force the Allied Veterans criminal defendants to forfeit assets. All Defendants participated in the decision of the amount necessary for each Allied Veterans defendant to buy back their freedom, as all had an interest in the financial extortion.  As a result of this coercion, the Seminole County Sheriff's Department obtained approximately $20 million in forfeited assets, which were divided pursuant to the Defendants' prior agreement.

44.     Mathis' license to practice law was suspended effective October 29, 2013. At the sentencing hearing on February 12, 2014, Mathis was sentenced to six (6) years incarceration, despite the recommendation of the Department of Corrections for probation only.  A Notice of Appeal was filed immediately with the clerk and a Motion for Bond Pending Appeal was filed. Although Mathis was not required to report for detention pending appeal, the six (6) year prison sentence loomed like the sword of Damocles.

45.     Mathis' conviction was reversed on appeal.  The Fifth District Court of Appeals ruled that the trial judge had erroneously excluded all of the evidence that would demonstrate that Mathis had good reason to believe his opinion on the legality of internet cafes was correct. The Fifth DCA further held that the standard used by the trial judge to convict Mathis was wrong.  A new trial was ordered in which all of the substantial evidence that had been excluded in the first trial would be admissible and the appropriate standard would be applicable.

46.     On March 15, 2017 the State filed a Nolle Prosequi dismissing all charges against Mathis. No quid pro quo was offered or provided by Mathis in exchange for the Nolle Prosequi.

---

[10] Mathis' counsel advised Defendant Cox that Mathis would not consider a plea negotiation.

47.     Immediately thereafter, the Florida Bar joined in a Motion for Immediate Lifting of the Suspension of Mathis' Florida Bar license. On July 17, 2017 the Florida Supreme Court unanimously lifted the suspension and reinstated Mathis' Florida Bar License retroactive to the day the suspension took effect in 2013.

48.     As a result of the actions of Defendants, Mathis was largely unemployed for nearly four and a half (4 ½) years, sustained significant lost wages, lost his lucrative law practice, and will sustain loss of earning capacity in the future. As a result of Defendants' actions Mathis has sustained pain and suffering, damage to reputation, emotional distress, psychological injuries, loss of capacity for the enjoyment of life, and mental anguish. Such losses are permanent and Mathis will suffer such losses in the future.

49.     Mathis has retained the law firm below and is obligated to pay said firm a reasonable fee for its legal services in the prosecution of this action.

50.     All conditions precedent to institution of this action have occurred, have been performed, or have been waived.

## COUNT I
## (§ 1983 – FIRST AMENDMENT)

51.     The allegations of paragraphs 1 through 50 are incorporated by reference and made a part hereof as if fully set forth herein.

52.     This is an action for damages based on 42 USC §1983 predicated on violations of the First Amendment of the United States Constitution.

53.     The ability of an attorney to provide advice and counsel for his clients and to provide legal representation of those clients by communicating with third parties such as courts, law enforcement, attorneys, as well as state and municipal government employees, is protected

speech under the First Amendment to the United States Constitution. Indeed, such speech is critically important to the functioning of the judicial system and the administration of laws.

54.     By criminalizing these legitimate communications, the Defendants have violated Mathis' civil rights. Such actions were taken under color of state law as misguided and malicious criminal prosecution based on alleged violation of state law.

55.     The entire criminal prosecution of Mathis was predicated on the false conclusion that his legal advice was wrong. The First Amendment protected Mathis' right to provide legal advice to his clients and to communicate with third parties in connection with the representation of his clients. By arresting Mathis based on this legal advice and legal representation, Defendants violated his civil rights.

56.     Only because defendants sought to criminalize Mathis' legal advice and representation did any of the alleged actions or omissions of Mathis become relevant for purposes of a criminal prosecution.

57.     Under the First Amendment, Mathis had the right to give legal advice to his clients, even if that legal advice was incorrect. The ramifications of incorrect legal advice could include legal malpractice or censure by Florida Bar, but should never include criminal prosecution.

58.     Defendants further criminalized Mathis' right to free speech by basing his criminal prosecution on the communications between Mathis and third parties such as law enforcement, attorneys, and stated local government officials within the scope of his legal representation. Based on the false presumption that his legal advice was incorrect, Defendants arrested him for allegedly promoting and protecting an illegal enterprise.

59.     Plaintiff Mathis has sustained damages as a result of the Defendants' violations of his First Amendment rights for which §1983 provides relief.

WHEREFORE, Plaintiffs Kelly B. Mathis and K. B. Mathis, PA hereby demand judgment against defendants Donald Eslinger, an individual, James "Sammy" Gibson, an individual, April Kirsheman, an individual, Pamela Bondi, an individual, and Nicholas Cox, an individual, jointly and severally for damages, attorneys' fees, costs, interest, and such other relief as this court deems appropriate.

## COUNT II
### (§1983 – FOURTH AMENDMENT)

60.     The allegations of paragraphs 1 through 50 are incorporated by reference and made a part hereof as if fully set forth herein.

61.     This is an action for damages predicated on 42 USC §1983 for violation of Mathis' Fourth Amendment rights under United States Constitution.

62.     The Fourth Amendment provides:

The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizure shall not be violated, and no Warrants shall issue, but upon probable cause, supported by oath or affirmation, in particularly describing the place to be search the person or things to be seized.

63.     Mathis' arrest, incarceration, and conviction constituted an unreasonable seizure and, thus, a violation of his Fourth Amendment rights. Further, Mathis had to surrender his passport and could not leave the State of Florida.   In addition, the seizure of documents and items from Mathis and the Mathis Law Firm was a violation of the Fourth Amendment.  The seizure of his person and property was without probable cause.  Moreover, Mathis remained "seized" for so long as the prosecution against him remained pending.

64.     The mere initiation of prosecution and seizure of Mathis caused or substantially contributed to extensive damages including, but not limited to, limitations on his liberty, freedom of association, freedom of movement by virtue of the terms of the bond, financial expense of his legal defense, cost of bond, reputational harm among members of the community, inability to transact business or obtain employment or practice law, as well as pain and suffering, emotional distress, and mental anguish.

WHEREFORE, Plaintiffs Kelly B. Mathis and K. B. Mathis, PA hereby demand judgment against defendants Donald Eslinger, an individual, James "Sammy" Gibson, an individual, April Kirsheman, an individual, Pamela Bondi, an individual, and Nicholas Cox, an individual, jointly and severally, for damages, attorneys' fees, costs, interest, and such other relief as this court deems appropriate.

## COUNT III
### (§1983 – MALICIOUS PROSECUTION)

65.     The allegations of paragraphs 1 through 50 are incorporated by reference and made a part hereof as it fully set forth herein.

66.     This is an action for damages pursuant to 42 USC §1983 predicated on the malicious prosecution of Mathis and violation of his constitutional rights.

67.     Defendants initiated criminal proceedings against Mathis without probable cause.

68.     The criminal proceedings ended in Mathis' favor by virtue of the filing of the Nolle Prosequi that was filed without quid pro quo from Mathis.

69.     Defendants acted maliciously, or out of spite, or for purpose other than bringing Mathis to justice.

70.     As a consequence of the initiation of criminal proceedings Mathis suffered significant deprivation of liberty and the damages set forth above.

71.     Defendants intentionally and fraudulently fabricated the charges against Mathis leading to his prosecution.

WHEREFORE, Plaintiff Kelly B. Mathis hereby demands judgment against defendants Donald Eslinger, an individual, James "Sammy" Gibson, an individual, April Kirsheman, an individual, Pamela Bondi, an individual, and Nicholas Cox, an individual, jointly and severally, for damages, attorneys' fees, costs, interest, and such other relief as this court deems appropriate.

## COUNT IV
## (§1983 – CONSPIRACY TO COMMIT MALICIOUS PROSECUTION)

72.     The allegations of paragraphs 1 through 50 are incorporated by reference and made a part hereof as if fully set forth herein.

73.     This is an action for damages pursuant to 42 USC §1983 predicated on the conspiracy to commit malicious prosecution of Mathis and violation of his constitutional rights.

74.     Defendants entered into a conspiracy to initiate criminal proceedings against Mathis without probable cause.

75.     The criminal proceedings ended in Mathis' favor by virtue of the filing of the Nolle Prosequi that was filed without quid pro quo from Mathis.

76.     Defendants acted maliciously, or out of spite, or for purpose other than bringing Mathis to justice.

77.     As a consequence of the initiation of criminal proceedings Mathis suffered significant deprivation of liberty and the damages set forth above.

78.     Defendants intentionally and fraudulently fabricated the charges against Mathis leading to his prosecution.

WHEREFORE, Plaintiff Kelly B. Mathis hereby demands judgment against defendants Donald Eslinger, an individual, James "Sammy" Gibson, an individual, April Kirsheman, an individual, Pamela Bondi, an individual, and Nicholas Cox, an individual, jointly and severally, for damages, attorneys' fees, costs, interest, and such other relief as this court deems appropriate.

## COUNT V
### (§ 1983 – ABUSE OF PROCESS)

79.     The allegations of paragraphs 1 through 50 are incorporated by reference and made a part hereof as if fully set forth herein.

80.     This is an action for damages pursuant to 42 USC §1983 predicated on the abuse of process against Mathis and violation of his constitutional rights.

81.     Defendants maliciously and deliberately misused the criminal court process in a manner not justified by the facts and circumstances.

82.     Defendants acted by motivations or purposes other than the administration of justice, including, but not limited to, the following:

  A.  Financial benefit to their department or office;

  B.  Accomplishing the shut-down of Allied Veterans;

  C.  Career benefits;

  D.  Political benefits;

  E.  Depriving Allied Veterans of its chosen counsel;

  F.  Depriving Allied Veterans of its spokesperson;

  G.  Obtaining attorney/client privileged documents; and/or

H. Delaying proceeding to obtain favorable media coverage.

83. Plaintiffs Mathis and Mathis Law Firm sustained damages as a result of Defendants' abuse of process as aforesaid.

WHEREFORE, Plaintiff Kelly B. Mathis and K. B. Mathis, P.A. hereby demand judgment against defendants Donald Eslinger, an individual, James "Sammy" Gibson, an individual, April Kirsheman, an individual, Pamela Bondi, an individual, and Nicholas Cox, an individual, jointly and severally, for damages, attorneys' fees, costs, interest, and such other relief as this court deems appropriate.

## COUNT VI
### (MALICIOUS PROSECUTION)

84. The allegations of paragraphs 1 through 50 are incorporated by reference and made a part hereof as if fully set forth herein.

85. This is an action for malicious prosecution based on Florida law.

86. Defendants initiated criminal proceedings against Mathis without probable cause.

87. The criminal proceedings ended in Mathis' favor by virtue of the filing of the Nolle Prosequi that was filed without quid pro quo from Mathis.

88. Defendants acted maliciously, or out of spite, or for purpose other than bringing Mathis to justice.

89. As a consequence of the initiation of criminal proceedings Mathis suffered significant deprivation of liberty and the damages set forth above.

90. Defendants intentionally and fraudulently fabricated the charges against Mathis leading to his prosecution.

WHEREFORE, Plaintiff Kelly B. Mathis hereby demands judgment against defendants Donald Eslinger, an individual, James "Sammy" Gibson, an individual, April Kirsheman, an individual, Pamela Bondi, an individual, and Nicholas Cox, an individual, jointly and severally, for damages, attorneys' fees, costs, interest, and such other relief as this court deems appropriate

## COUNT VII
### (CONSPIRACY TO COMMIT MALICIOUS PROSECUTION)

91.    The allegations of paragraphs 1 through 50 are incorporated by reference and made a part hereof as if fully set forth herein.

92.    This is an action for conspiracy to commit malicious prosecution based on Florida law.

93.    Defendants entered into a conspiracy to initiate criminal proceedings against Mathis without probable cause.

94.    The criminal proceedings ended in Mathis' favor by virtue of the filing of the Nolle Prosequi that was filed without quid pro quo from Mathis.

95.    Defendants acted maliciously, or out of spite, or for purpose other than bringing Mathis to justice.

96.    As a consequence of the initiation of criminal proceedings Mathis suffered significant deprivation of liberty and the damages set forth above.

97.    Defendants intentionally and fraudulently fabricated the charges against Mathis leading to his prosecution.

WHEREFORE, Plaintiff Kelly B. Mathis hereby demands judgment against defendants Donald Eslinger, an individual, James "Sammy" Gibson, an individual, April Kirsheman, an

individual, Pamela Bondi, an individual, and Nicholas Cox, an individual, jointly and severally, for damages, attorneys' fees, costs, interest, and such other relief as this court deems appropriate.

## COUNT VIII
## (ABUSE OF PROCESS)

98.     The allegations of paragraphs 1 through 50 are incorporated by reference and made a part hereof as if fully set forth herein.

99.     This is an action for abuse of process based on Florida law.

100.     Defendants maliciously and deliberately misused the criminal court process in a manner not justified by the facts and circumstances.

101.     Defendants acted by motivations or purposes other than the administration of justice including, but not limited to, the following:

A.  Financial benefit to their department or office;

B.  Accomplishing the shut-down of Allied Veterans;

C.  Career benefits;

D.  Political benefits;

E.  Depriving Allied Veterans of its chosen counsel;

F.  Depriving Allied Veterans of its spokesperson;

G.  Obtaining attorney/client privileged documents; and/or

H.  Delaying proceeding to obtain favorable media coverage.

102.     Plaintiffs Mathis and Mathis Law Firm sustained damages as a result of Defendants' abuse of process as aforesaid.

WHEREFORE, Plaintiffs Kelly B. Mathis and K. B. Mathis, PA hereby demand judgment against defendants Donald Eslinger, an individual, James "Sammy" Gibson, an

individual, April Kirsheman, an individual, Pamela Bondi, an individual, and Nicholas Cox, an individual, jointly and severally, for damages, attorneys' fees, costs, interest, and such other relief as this court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all issues so triable.

DATED this 6th day of March, 2019.

LAW OFFICES OF KELLY B. MATHIS

Kelly B. Mathis, Esquire
Fla. Bar No.:  0768588
Lead Counsel
12276 San Jose Blvd., Suite 126
Jacksonville, FL  32223
(904) 880-5114
Primary:  kmathis@mathislaw.net
Secondary: elizabeth@mathislaw.net
                 carmen@mathislaw.net